[No. 8283. *En Banc.* December 23, 1909.]

SAVAGE-SCOFIELD COMPANY, *Appellant*, v. THE CITY OF

TACOMA *et al.*, *Respondents*.[1]

MUNICIPAL CORPORATIONS — IMPROVEMENTS — ASSESSMENTS — RE-
BATES—ORDINANCES—CONSTRUCTION. A "rebate" allowed to "owners
of the property" assessed for the pavement of a street, required by
an ordinance to be paid into the city treasury by a street railway
company to cover the cost of paving between tracks subsequently
laid in the street, refers to the owners at the time the assessment
was paid, under a strict construction of the statute; and a subse-
quent purchaser of a lot has no interest in the rebate.

Appeal from an order and judgment of the superior court
for Pierce county, Shackleford, J., entered June 19, 1909,
and June 21, 1909, upon sustaining a demurrer to the com-
plaint, dismissing an action to recover a rebate on an assess-
ment paid for a local improvement. Affirmed.

*Marshall K. Snell, Bertha M. Snell,* and *E. F. Freeman,*
for appellant.

*T. L. Stiles, Frank R. Baker,* and *F. A. Latcham,* for
respondents.

DUNBAR, J.—The amended complaint on which appellant
has elected to stand in this case, after alleging its corporate
existence, the official capacity of the defendants, etc., sets
forth that the city of Tacoma, by ordinance and amendments
thereto, granted to E. J. Felt certain franchises over the
streets of Tacoma, for street railway purposes; that the city

[1] Reported in 105 Pac. 1032.

of Tacoma had passed a certain ordinance, the material part of which was as follows:

"That hereafter when any street covered by this franchise shall have been paved before the laying of tracks under this franchise, before commencing any work on such streets, for the laying of tracks, the said grantee, his successors or assigns, shall pay into the city treasury the cost of the pavement on the part of said streets which is covered by the franchise between the tracks, between the rails, and for two feet outside of the outside rails of the track or tracks; and said sum so to be paid shall be determined by *pro-rating* the cost of said portion of said street in proportion to the original cost of the entire pavement on such street, and said sum shall be paid to the city treasurer and by the city treasurer and controller rebated to the owners of the property where the special assessment against the property affected thereby shall have been paid," etc.   Ordinance of Tacoma, No. 2,768.

The complaint sets up the fact that lots 1 and 2 in block 704, New Tacoma, were included in the special improvement district No. 255, of the city of Tacoma, and were duly assessed their proportionate share, to wit, $1,107.35, of the cost of paving South Seventh street in said city; that one William Jones and wife had been the owners of the property; that negotiations had been pending between Jones and wife and Savage & Scofield for a sale of this property; that under the contract the buyer was to assume a mortgage of $2,500, which was on the property; that the purchase price of the property was to be $40,000; that out of the $2,000 which was paid over at the time of the execution of the contract, the assessment levied against the said lots for the paving done on South Seventh street was paid out of said $2,000; that the transaction was afterwards completed, and that the warranty deed was received by the purchasers in due time. The complaint then sets forth the subsequent payment to the city of Tacoma by the traction company, as the assignee of E. J. Felt, of the proportionate cost of the pavement, amounting to $190.80; and the claim is made that, by reason of the foregoing, the sum of $190.80 became due and

owing plaintiff as the owner of said property. Demand was made for the same, which was refused, and this action was brought.

The defendants interposed separate demurrers, which were to the effect, (1) that the court has no jurisdiction of the actions against each defendant, which demurrer was overruled by the court; and (2) that the amended complaint did not state facts sufficient to constitute a cause of action, which demurrer was sustained by the court on the last proposition. Plaintiff electing to stand on its amended complaint, action was dismissed, and judgment was rendered against plaintiff for costs, from which order and judgment this appeal is taken.

There are some questions discussed by learned counsel in this case which, under the view we take of the merits of the case, it is not necessary for us to notice, as we think it is best to determine this case upon its merits, so that any further litigation on the subject may be foreclosed. We may assume from the contract pleaded in the complaint that this assessment was paid out of Jones' money, and not out of the money belonging to the appellant. In fact, in its recapitulation on the last page of its brief, the appellant says, in so many words, that the complaint shows that appellant's grantors were the owners and paid the assessment.

But it is contended by the appellant that the court erred in its construction of the ordinance above quoted, which is the material question in this case.. Many authorities are cited to support principles which cannot be questioned, viz: That the intent of the ordinance controls its construction; that it is presumed that words and phrases used in an ordinance or statute are used therein in their familiar and popular sense; and that in construing statutes the particular inquiry is, not what is the abstract force of words or terms used or what they may comprehend, but in what sense they were intended to be used, etc. But admitting the principles announced, it seems to us that they are not controlling in

this case, for a strict construction of this ordinance, which is contended for by the appellant, would do violence to its evident meaning and would result in injustice. The evident object of the ordinance was to make restitution. This means, to restore. The money could only be restored to the person to whom it properly belonged and who had once had possession of it. The appellant says that the latest dictionaries of the English language define the word "rebate" to mean, "to draw back"; "to discount"; "to make a reduction from a gross or normal amount or sum."

Accepting the common use of the word "rebate"—"to draw back," one cannot draw back something which he never put forward, and it would be doing more violence to the plain meaning of words to hold that the word rebate as used in this ordinance has reference to a stranger who had never given or put forth the amount in question, than it would be to hold that the word "owner" as used in the ordinance had reference to the person who was owner at the time that the money was paid into the treasury instead of the person who happened to be owner at the time when the rebate was due. In passing the ordinance, the council was evidently considering the ordinary case where the owner at the time the assessment was paid would be the owner at the time of the payment into the treasury by the contractor. It is evident that a case of this kind did not occur to them, or they would have made provision for the special cases. Counsel says that the ordinance makes no reference to the person who paid the assessment, and therefore it must be that it was the intention that the money should follow the lot. But the rebate has to be paid to some one. It is not possible to pay it to the lot. That some one is the owner of the lot. So that the question again comes back to the proposition of what owner was contemplated by the ordinance. It seems so plain to our minds that Savage-Scofield Company has no interest whatever in this rebate that it is a little difficult to discuss the proposition.

We think the court did not err in refusing to place the strict construction upon the ordinance which was claimed for it by the appellant, and the judgment will therefore be affirmed.

RUDKIN, C. J., MORRIS, CROW, and PARKER, JJ., concur.